IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC. | ) ) ) | |
| and | ) ) | |
| CHRISTOPHER D. BAKER, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:07-cv-00785 (RCL) |
| THE SAN DIEGO UNION TRIBUNE | ) ) | |
| and | ) ) | |
| THE COPLEY PRESS, INC., | ) ) | |
| Defendants. | ) | |

---

## DEFENDANTS THE COPLEY PRESS, INC.'S AND THE SAN DIEGO UNION-TRIBUNE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE FOR IMPROPER VENUE

Defendants The Copley Press, Inc. and The San Diego Union Tribune, by counsel, respectfully move the Court, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint of Plaintiffs Shirlington Limousine and Transportation, Inc. and Christopher D. Baker for lack of personal jurisdiction or, alternatively, for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

The reasons in support of this motion are set forth more fully in the accompanying Memorandum in Support.

DATED:   October 22, 2007

SANDS ANDERSON MARKS & MILLER
A Professional Corporation


_____/s/ Paige A. Levy_____
Paige A. Levy        D.C. Bar No. 453535
plevy@sandsanderson.com
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
(703) 893-3600
(703) 893-8484 (fax)

**Counsel for Defendants**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC. | ) ) ) |
| and | ) ) |
| CHRISTOPHER D. BAKER, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 1:07-cv-00785 (RCL) |
| THE SAN DIEGO UNION TRIBUNE | ) ) |
| and | ) ) |
| THE COPLEY PRESS, INC., | ) ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS THE COPLEY PRESS, INC.'S AND
THE SAN DIEGO UNION-TRIBUNE'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE FOR IMPROPER VENUE**

Defendants The Copley Press, Inc. and The San Diego Union Tribune (collectively, "Copley"), by counsel, respectfully submit this Memorandum in support of their motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint of Plaintiffs Shirlington Limousine and Transportation, Inc. ("Plaintiff" or "Shirlington") and Christopher D. Baker ("Plaintiff" or "Baker") for lack of personal jurisdiction or, alternatively, for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

**INTRODUCTION**

The precise issues raised herein were previously decided in favor of Defendant Copley by this very Court in 1997, in virtually identical circumstances. See Carey Dunai Lohrenz v. Elaine

Donnelly, The Copley Press, Inc. doing business as The San Diego Union Tribune, News World Communications, Inc. John Does, Center for Military Readiness and United States Department of the Navy, 958 F. Supp. 17 (D.D.C. 1997), Civil Action No. 96-0777 (Lamberth, J.) ("Lohrenz v. Copley"). Nothing dictates a different result here. The essential law in the District of Columbia regarding the exercise of personal jurisdiction over nonresident defendants has not changed substantially over the last ten years; nor have the essential facts on which personal jurisdiction over Copley by this Court conceivably could be based.

On or about April 30, 2007 Plaintiffs filed a Complaint in this Court against The Copley Press, Inc. and one of its related entities, The San Diego Union Tribune. On August 27, 2007 Plaintiffs moved for an extension of time to serve the Summonses upon the Defendants, which motion was granted. The Summonses and Complaint were served upon Defendants on September 18, 2007. The Complaint alleged against both defendants causes of action for "Libel" (Count I) and "False Light" (Count II).

Less than one day after we filed a Motion to Dismiss the original Complaint (based on a lack of personal jurisdiction and venue), Plaintiffs filed the First Amended Complaint. The First Amended Complaint attempts to add sufficient allegations to warrant the assertion of personal jurisdiction over Defendants (it also added a claim for "Libel *Per Se*" (Count II)). However, the additional factual allegations still fail to create a basis for the Court to exercise personal jurisdiction over these nonresident defendants.

Plaintiffs are Virginia residents. They seek to force Defendants located across the United States to defend themselves in the District of Columbia. One Defendant which Plaintiffs seek to haul into this Court from thousands of miles away is Copley, the owner and publisher of the other Defendant, The San Diego Union Tribune ("San Diego Union Tribune"). Although The

San Diego Union-Tribune is a separate entity and separately named in the Complaint, it is simply a subsidiary of Copley. According to Plaintiffs, they were somehow injured by newspaper articles published in The San Diego Union Tribune. Based upon those articles, Plaintiffs are attempting to drag Copley and The San Diego Union Tribune from their places of business in California to a courtroom in the District of Columbia to litigate issues related solely to actions which occurred in San Diego. There is no basis to do so.

There are no legally sufficient connections between The San Diego Union Tribune newspaper articles and the District of Columbia. **That this Court has no personal jurisdiction over Copley nor The San Diego Union Tribune is obvious not just from the fact that this Court has already so ruled, see Lohrenz v. Copley,** cited above, but also from the fact that (1) Copley is based in San Diego; (2) The San Diego Union Tribune is based in San Diego; (3) the allegedly defamatory newspaper articles were investigated and written by a San Diego resident reporter; and (4) the articles were published in San Diego. In short, Plaintiffs have insufficient facts to support the minimum contacts necessary for personal jurisdiction over these out-of-state residents. Accordingly, since Plaintiffs are unable to plead facts sufficient to meet their burden of establishing personal jurisdiction over both Copley and The San Diego Union Tribune, both Defendants should be dismissed from this action for lack of personal jurisdiction.

As an independent and alternative basis, this Court should dismiss this action against Copley and The San Diego Union Tribune for improper venue. As set forth below, venue is only proper in San Diego, CA.

## STATEMENT OF FACTS

Plaintiff Shirlington Limousine and Transportation, Inc. is a Virginia corporation. First Amended Complaint at ¶ 5. Plaintiff Baker, who is President of Shirlington Limousine and

Transportation, Inc., is a Virginia resident. Id. at ¶ 6. According to the First Amended Complaint, The San Diego Union Tribune published false and defamatory articles on April 28 and 29, 2006. Id. at ¶¶ 7-8. According to the First Amended Complaint, the articles reported an investigation by federal prosecutors into whether former Congressman Duke Cunningham and other legislators arranged for prostitutes to be brought to certain hotels by limousines owned by Plaintiff Shirlington.[1] Id. at ¶¶ 7-10. These statements also allegedly placed Plaintiffs in a false light. Id. at ¶¶ 24–26.

The virtually identical articles of April 28 and 20, 2006 were written by Dean Calbreath. Id. at ¶ 9; see also Declaration of Dean Calbreath ("Calbreath Dec.") at ¶¶ 2-4, attached as Exhibit C.

Copley is headquartered in San Diego County and owns local daily and weekly newspapers in California. See Declaration of Dean Dwyer ("Dwyer Dec.") at ¶ 2, attached as Exhibit D. Copley does not publish any national newspapers. Id. Copley does not publish any newspapers within the District of Columbia. Id. Only one paid subscription of this newspaper is sent by mail to an address within the District of Columbia. This one newspaper goes to the United States Library of Congress. Id. at ¶ 3. Copley does not target subscribers in the District of Columbia. Id. at ¶ 2.

Copley's only physical presence in the District of Columbia is through a division of Copley, Copley News Service. Dwyer Dec. at ¶ 2. Copley News Service, which is headquartered in San Diego, maintains a bureau in the District of Columbia. Declaration of Glenda Winders ("Winders Dec.") at ¶ 2, attached as Exhibit E. Copley News Service's purpose

---

[1]    Attached as Exhibits A and B for the Court's convenience are the two allegedly libelous articles.

is to gather information concerning newsworthy events occurring in the District of Columbia. Id. Copley News Service does not publish or distribute any newspapers. Id.

The bureau of Copley News Service in the District of Columbia did not participate in any way in researching, writing or distributing any of the two articles challenged by Plaintiffs. Calbreath Dec. at ¶¶ 2-5. In fact, no activity related to the creation, publication or distribution of the subject articles occurred within the District of Columbia. Winders Dec. at ¶ 2.

The First Amended Complaint alleges that "Defendants operate a news publication business in DC and accordingly transact business in DC." First Amended Complaint at ¶ 2. However, this allegation is not accurate: Defendants do not operate a news publication business in DC. See Dwyer Dec. at ¶ 2; Winders Dec. at ¶ 2.

Relevant to this Motion, the First Amended Complaint further alleges that Defendants circulated the subject articles by electronic means, "including, but not limited through their website, in D.C." First Amended Complaint at ¶ 8. However, there is no express allegation that anyone in the District of Columbia ever accessed these two articles through Defendants' website.

Defendants aver that they did not publish any electronic versions of these two articles other than through the essentially passive website operated by The San Diego Union Tribune. See Declaration of James Christopher Jennewin ("Jennewin Dec.") at ¶ 2, attached as Exhibit F. Interactivity on the website operated by The San Diego Union Tribune is limited and non-commercial, in the sense that visitors to or users of the site are not charged a fee to access the content. Id. at ¶ 3. No registration is required to access the content on the U-T website and a reader is asked to answer a few questions before accessing the current day's newspaper. Id. The website maintained by Defendants is targeted at San Diego Union Tribune readers. Id. at ¶ 4. The U-T website is not intended to target readers in the District of Columbia. The overall

5

content of the website is local to San Diego, CA and does not contain advertisements aimed at residents of the District of Columbia. Id. For example, the website provides access to local (San Diego, CA) weather and traffic information and links to websites for local surf conditions and local webcams. Id. The website is designed to serve local readers in San Diego; to expand the reach of the newspaper within the local market; and to provide local markets with a place for classified ads. Id.

The primary web servers for The San Diego Union Tribune's website are in two locations in San Diego, CA. Copley uses third-party applications (e.g., for automotive classified, streaming video, site analytics, etc.), but to its knowledge none of the third parties' servers are located in Washington, D.C. Id. at ¶ 5.

## ARGUMENT

I.    **NEITHER COPLEY NOR THE SAN DIEGO UNION TRIBUNE ARE SUBJECT TO SPECIFIC PERSONAL JURISDICTION UNDER THE DISTRICT OF COLUMBIA LONG-ARM STATUE.**

    A.    **The District of Columbia Long-Arm Statute and the Applicable Legal Standards.**

In order for Plaintiffs to maintain this lawsuit against non-resident defendants in the District of Columbia, they must establish that jurisdiction is proper pursuant to the District of Columbia's long-arm statute and that such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Jones v. City of Buffalo, 901 F. Supp. 19, 21 (D.D.C. 1995) (burden of proof is on plaintiff to show that defendant is subject to personal jurisdiction under District of Columbia long-arm statute), aff'd, 1996 WL 174352 (D.D.C. March 12, 1996); Deutsch v. United States Dep't. of Justice, 881 F. Supp. 49, 52 (D.D.C. 1995) (District of Columbia long-arm statute is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District

of Columbia), aff'd, 93 F.3d 986 (D.D.C. 1996); Wiggins v. Equifax Inc., 853 F. Supp. 500, 502

(D.D.C. 1994) (Lamberth, J.) (plaintiff bears the burden of establishing a factual basis for the

exercise of personal jurisdiction over defendant). To meet this burden, Plaintiffs must establish

that personal jurisdiction over Copley and The San Diego Union Tribune are proper by

demonstrating a factual basis for the exercise of such jurisdiction. Novak-Canzeri v. Saud, 864

F. Supp. 203, 205 (D.D.C. 1994). Plaintiffs cannot sustain their burden through conclusory

allegations:

> In attempting to satisfy this burden, a plaintiff may not rest on bare
> allegations or conclusory statements alone and must make at least a *prima facie*
> showing if it is to avoid dismissal for want of jurisdiction. While the long-arm
> statute is interpreted broadly, Plaintiff must allege some specific facts evidencing
> purposeful activity by Defendants in the District of Columbia by which they
> invoked the benefits and protections of its laws.

Id. (citations omitted) (conclusory statements followed by boilerplate allegations regarding

defendants' purported business contacts with the District of Columbia, as well as allegations that

generally track the statutory requisites and the characterizations used by courts in describing the

kinds of activities that may suffice to establish jurisdiction, do not satisfy the requisite standards

for the exercise of personal jurisdiction over defendants); see also First Chicago Int'l. v. United

Exchange Co., Ltd., 836 F.2d 1375, 1378 (D.C. Cir. 1988) (district court did not have personal

jurisdiction under the District of Columbia long-arm statute).

Moreover, "when considering personal jurisdiction, the Court need not treat all of the

plaintiff's allegations as true." Atlantigas Corp. v. Nisource, Inc. et al., 290 F. Supp. 2d 34, 42

(D.D.C. 2003). "Instead, the court 'may receive and weigh affidavits and other relevant matter

to assist in determining the jurisdictional facts.'" Id. (citing United States v. Philip Morris Inc.,

116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)).

The District of Columbia's Long-Arm Statute, codified at D.C. Code § 13-423, provides in pertinent part:

> a)     A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> (1) transacting any business in the district of Columbia; . . .
>
> b)     When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

District of Columbia courts interpreting this provision hold that to establish jurisdiction, the plaintiff must demonstrate that finding jurisdiction over the individual defendant would not offend traditional notions of fair play and substantial justice. Dickson v. United States, 831 F. Supp. 893, 897 (D.D.C. 1993) (citing International Shoe v. State of Washington, 326 U.S. 310, 316 (1945)) (under the "minimum contacts" doctrine, Complaint presented insufficient connection between defendants and the District of Columbia).

Plaintiffs' First Amended Complaint fails to make a prima facie showing of specific personal jurisdiction over Copley or The San Diego Union Tribune in the District of Columbia, under any provision of the long-arm statute. The First Amended Complaint is virtually silent regarding how the District's long-arm statute possibly could be interpreted to afford jurisdiction in this case. In fact, few paragraphs in the First Amended Complaint are even remotely relevant to the issue of personal jurisdiction over Defendants.

Paragraph 3 of the First Amended Complaint alleges that Copley "publishes several newspapers, operates a national news wire service, and is headquartered in the state of Ohio." None of these assertions ties Copley to the District of Columbia in any way. None of these assertions enables Plaintiffs to demonstrate to this court that they have personal jurisdiction over

Copley in the District of Columbia. None of the assertions has any role in giving rise to a claim for relief.

Paragraph 4 of the First Amended Complaint alleges that The San Diego Union Tribune is located in San Diego, CA, and that it "operates a press office with several employees in DC at the National Press Club." First, San Diego is not the District of Columbia and is in fact located more than 2,500 miles from the District of Columbia. Second, even if assumed to be true, there is no allegation that District of Columbia employees at the National Press Club have anything to do with this suit, or that Plaintiffs' claim for relief arises out their existence.

Paragraph 9 concedes that both articles were written by Dean Calbreath. He wrote them in San Diego, and not Washington DC, and the bureau of Copley News Service in the District of Columbia did not participate in any way in researching, writing or distributing the articles. Calbreath Dec. at ¶¶ 2-5. In fact, no activity related to the creation, publication or distribution of the subject articles occurred within the District of Columbia. Winders Dec. at ¶ 2.

**B.    Neither Copley Nor The San Diego Union Tribune are Subject to Jurisdiction under § 13-423(a)(1) because this lawsuit does not relate to the business conducted in the District of Columbia and because Copley and The San Diego Union Tribune both fall within the News-Gathering Exception.**

Section 13-423(a)(1) affords jurisdiction over a company transacting business within the District of Columbia. However, jurisdiction based on this provision is proper only when the claim for relief asserted is related to the business transacted that forms the basis for jurisdiction. See D.C. Code § 13-423(a)(1) and (b). In this case, although Copley conducts business in the District of Columbia via Copley News Service, it is nevertheless not subject to jurisdiction under this section for the reasons discussed below.

9

       **1.**       **This Court is without personal jurisdiction over Copley pursuant to § 13-423(a)(1) because the claims asserted against Copley do not arise from the business it transacts in the District of Columbia.**

Section 13-423(a)(1) only can be asserted against a defendant if the legal claim is directly related to the business being conducted.  "Courts have uniformly held that subsection (a)(1) confers personal jurisdiction over a defendant only if the plaintiff's claim arises from the defendant's contact with the District [of Columbia]."  Ross v. Product Development, 736 F. Supp. 285, 289 (D.D.C. 1989) (Lamberth, J.) (defendant not subject to jurisdiction in the District of Columbia based on Virginia auto accident because business was distribution of telephone books in the District); Willis v. Willis, 655 F.2d 1333, 1336 (D.C. Cir. 1976) ("The District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction.").  Indeed, as set forth in Lohrenz v. Copley, 958 F. Supp. at 18:

> [Plaintiff] fails to show the link between [Copley's News Service and its syndicated columns distributed in many publications] and the allegedly libelous articles published by Copley Press in the San Diego Union Tribune [at issue in that case].  The long-arm statute grants the Court jurisdiction only where the 'operative facts' of the claimed injury arise from the defendant's specific transacted business in the District.  **As defendant's affidavits show, the Union-Tribune's articles were entirely researched and written without input by members of the D.C. Bureau.  [Plaintiff] has failed to offer sufficient claims to support a prima facie showing that the injuries she allegedly suffered from the writing and publication of the Union-Tribune in San Diego are linked to the transacted business of the Copley Press' D.C. Bureau.**

(Citations omitted) (emphasis added).  See also Gowens v. Dyncorp, 132 F. Supp. 2d 38, 41-42 (D.D.C. 2001) (no personal jurisdiction where alleged conduct at issue in the Complaint lacked a significant connection to the District of Columbia).

Plaintiffs' libel, libel per se and false light claims are without question completely unrelated to the business conducted by Copley News Service[2] in the District of Columbia, or whatever Plaintiffs are trying to intimate by referencing San Diego Union Tribune employees at the National Press Club. Copley News Service maintains a bureau in the District of Columbia which reports and investigates news stories. Winders Dec. at ¶ 2; Dwyer Dec. ¶ 2. It does not publish news stories. Winders Dec. ¶ 2. Moreover, Copley News Service's Washington, D.C. bureau did not participate in either investigating or writing the articles in question. Calbreath Dec. at ¶¶ 2-5; Dwyer at ¶ 2. Therefore, this lawsuit is unrelated to the business being conducted in the District of Columbia. Accordingly, § 13-423(a)(1) is unavailable to Plaintiffs as a means to assert personal jurisdiction over Copley in this action.

**2.    This Court is without Personal Jurisdiction pursuant to the news gathering exception.**

Yet another reason that the "transacting business" provision of the long-arm statute is an improper ground upon which personal jurisdiction over Copley or The San Diego Union Tribune may be asserted is the well established exception for all news organizations collecting news within the District of Columbia. (i.e., the "news gathering exception"). Indeed, District of Columbia courts consistently have recognized the news gathering exception by holding that any news organization present in the District of Columbia that only conducts business therein by investigating and reporting news for a newspaper outside the District is not "transacting business" for purposes of the long-arm statute. Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217, 222 n.9 (D.C. Cir. 1986) (Kentucky newspaper not subject to jurisdiction in the District of Columbia despite fact that a newspaper reporter was based in the District of Columbia

---

[2]    Copley News Service is Copley's only physical presence in the District of Columbia.

11

and the article's information was gathered in the District); <u>McFarlane v. Esquire Magazine</u>, 22

Med. L. Rptr. 2033, 2037 n.5 (D.D.C. 1994), <u>aff'd</u> 74 F.3d 1296 (D.C. Cir. 1996) (magazine

reporter not subject to jurisdiction in the District of Columbia despite fact that he gathered news

within the District of Columbia), <u>cert</u>. <u>denied</u>, 519 U.S. 809 (1996).

 The law regarding the "news gathering exception" has not changed at all since this Court

last ruled in favor of Copley in <u>Lohrenz v. Copley</u>, 958 F. Supp. at 18-19 ("In applying the

District of Columbia's long-arm statute, this Circuit has consistently held that the business

conduct of news gathering organizations within the District cannot be used to establish personal

jurisdiction over an out-of-state news agency. The policy behind the so-called news gathering

exception is that, in extending personal jurisdiction on the business or conduct of a D.C. news

bureau, the long-arm statute would subject nearly all important national and international

newspapers to suit in the District.") (citations omitted).

 Decades ago, the Court of Appeals for the D.C. Circuit recognized the purpose and policy

underlying the news gathering exception:

> As the seat of national government, Washington is the source of such news of
> national importance, which makes it desirable in the public interest that many
> newspapers should maintain vigilant correspondents here. If the employment of a
> Washington correspondent, the announcement of his address, and the payment of
> his office rent, subjects a nonresident newspaper corporation to legal process in
> Washington for matter appearing in its paper at home, it would bring in nearly
> every important newspaper in the nation, and many foreign publishing
> corporations, which in our opinion the present statute does not do.

<u>Neely v. Philadelphia Inquirer Co.</u>, 62 F.2d 873, 875 (D.C. Cir. 1932); <u>see also</u> <u>Moncrief</u>, 807

F.2d at 222 (citing <u>Neely</u>); <u>Margoles v. Johns</u>, 333 F. Supp. 942 (D.D.C. 1971), <u>aff'd</u>, 483 F.2d

1212 (D.D.C. 1973) (foreign newspaper corporation which maintains an office and news

correspondents in the District for the gathering of news is not "doing business" under § 13-423).

The District of Columbia courts have carved out the news gathering exception precisely for the reasons argued by Copley and The San Diego Union Tribune in the present motion to dismiss. Indeed, if the Court were to permit this action to go forward against Copley or The San Diego Union Tribune in the District of Columbia, the policy noted in <u>Neely</u> and repeatedly affirmed by courts in this jurisdiction, would be undermined, and such a decision would have the likely effect of hauling "nearly every important newspaper in this nation, and many foreign publishing corporations" into District of Columbia courts. Because the bureau of Copley News Service is present in the District of Columbia solely for the purpose of news gathering, § 13-423(a)(1) does not afford jurisdiction in this action over Copley.

C.    **Plaintiffs Did Not and Cannot Plead Facts Sufficient to Establish Jurisdiction Pursuant to §§ 13-423(a)(3) or (4).**

Plaintiffs failed to allege that their claim "arose" in the District of Columbia, and indeed only alleged that The San Diego Union Tribune is based in California and that the newspaper published the two articles in question. First Amended Complaint at ¶¶ 4 and 7-8. This is completely insufficient to establish jurisdiction in the District of Columbia pursuant to the long-arm statute. Sections 13-423(a)(3) and (4) are the only other provisions of the long-arm statute which could possibly afford jurisdiction under the facts of this case. However, again, Plaintiffs have not established -- and cannot establish -- facts supporting jurisdiction under those provisions.

1.    **Personal Jurisdiction Over Copley is Unavailable Under § 13-423(a)(3).**

Section 13-423(a)(3) only applies to defendants who cause injury in the District of Columbia by committing an act or omission inside the District of Columbia. The "act or omission" that allegedly caused injury to Plaintiffs in the instant case was publishing the articles

in The San Diego Union Tribune, an act that occurred inside California, not the District of Columbia. Caldwell Dec. at ¶¶ 2-5; Winders Dec. at ¶ 2; Calbreath Dec. at ¶ 2. As a matter of law, that allegedly injurious act occurred outside the District of Columbia. Moncrief, 897 F.2d at 221 (where newspaper in another jurisdiction printed an allegedly libelous article which was mailed into the District of Columbia and caused injury there, court could not exercise jurisdiction, as act or omission causing injury did not occur in the District). See also Moncrief v. Lexington Herald-Leader, 631 F. Supp. 772 (D.D.C. 1985) (the mailing of subscription copies of newspaper containing libeling article into the District of Columbia is not the type of act contemplated under § 13-423(a)(3)), aff'd 807 F.2d 217 (D.C. Cir. 1986).

District of Columbia cases analyzing similar facts as those present here uniformly hold that no act or omission occurs inside the District when the allegedly defamatory statement is printed outside the District of Columbia. See Moncrief, 807 F.2d at 221 (libel complaint by District of Columbia resident against newspaper publisher; defendant held not subject to personal jurisdiction pursuant to § 13-423(a)(3) because printing occurred outside the District of Columbia); McFarlane v. Esquire Magazine, 74 F.3d at 1300 (author of article libelous of District of Columbia resident not subject to personal jurisdiction pursuant to § 13-423(a)(3) because writing occurred outside the District); Margoles v. Johns, 483 F.2d 1212 (D.C. Cir. 1973) (Wisconsin resident who slandered plaintiff during telephone conversation with District of Columbia listener not subject to personal jurisdiction pursuant to § 13-423(a)(3) because statement made in Wisconsin). Therefore, because the allegedly defamatory newspaper articles were researched, written and published in San Diego, California, not the District of Columbia, § 13-423(a)(3) cannot be the basis of personal jurisdiction over Copley.

2.    **Personal Jurisdiction over Copley is unavailable under § 13-423(a)(4).**

Unlike § 13-423(a)(3), § 13-423(a)(4) affords personal jurisdiction over an out-of-state defendant when a tortious act is committed outside of the District of Columbia which causes injury inside the District of Columbia.   However, jurisdiction under this section is limited to situations where the defendant (1) regularly does or solicits business in the District of Columbia; (2) engages in a persistent course of conduct in the District of Columbia; or (3) derives substantial revenue in the District of Columbia.   D.C. Code § 13-423(a)(4).   See also Akbar v. New York Magazine, 490 F. Supp. 60 (D.D.C. 1980) (to acquire jurisdiction under § 13-423(a)(4), three requirements must be met: (1) a tortious injury within the District of Columbia caused by (2) defendant's act or omission outside the District of Columbia (3) if the defendant had one of the "minimum contacts" with the District of Columbia enumerated in the statutory provision).

As stated above, it is Plaintiffs' burden to make a prima facie case by establishing through non-conclusory facts that they meet the requirements of the statue.   Novak-Canzeri, 864 F. Supp. at 205; Fogle, 774 F. Supp. at 21.   Here, Plaintiffs have offered **no allegations of facts** to support the requirement that they suffered injury inside the District of Columbia due to The San Diego Union Tribune articles.

Plaintiffs allege that their injuries consist of generic harm to "their good name, fame and credit, and brought into public disgrace, and infamy in their community, and furthermore suffered economic, commercial, emotional, psychological and political damage."  First Amended Complaint at ¶ 18.   Plaintiffs also allegedly were subject to congressional and commercial scrutiny.   Id. at ¶ 19.   However, Plaintiffs do not allege that any of these injuries were caused in the District of Columbia.   In fact, Plaintiffs still do not even allege that The San Diego Union

Tribune newspaper articles were ever read inside of the District of Columbia, and simply suggest that the passive website made the articles available inside the District of Columbia. Instead, Plaintiffs again assert that allegedly false or inaccurate statements were relied upon by other media who repeated them. Again, Plaintiffs have not sufficiently plead facts to satisfy the jurisdictional requirements of § 13-423(a)(4).

Although unnecessary for purposes of this motion, Copley and The San Diego Tribune can also quickly dispose of the other requirements of § 13-423(a)(4). The "regularly solicits business" and "persistent course of conduct" requirements fall within the news-gathering exception discussed in Section I.B., above. See Moncrief, 897 F.2d at 222 n.9 ("[The Court of Appeals for the D. C. Circuit] has also held that the reasons underlying the 'newsgathering exception' apply equally to the 'persistent course of conduct' requirement in paragraph (a)(4)]" and (a)(1).). See also Baltierra v. West Virginia Bd. of Medicine, 253 F. Supp. 2d 9, 13-14 (D.D.C. 2003) (personal jurisdiction over nonresident defendant not proper under 13-423(a)(4)).

Therefore, as a matter of law, these requirements cannot be established by Plaintiffs. Additionally, Plaintiffs have not alleged and cannot allege any facts in good faith to support a "substantial income" argument pursuant to § 13-423(a)(4).

## II.    DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION UNDER D.C. CODE § 13-334(a).

Apparently operating under the misimpression that any website maintained by a nonresident defendant is sufficient to create a basis for the exercise of general personal jurisdiction anywhere in the United States, the First Amended Complaint tacks on an allegation that Defendants circulated through a website the two articles which they contend are the subject of the lawsuit. See First Amended Complaint at ¶ 8.

"Under the doctrine of general jurisdiction [pursuant to D.C. Code § 13-334(a)], a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in 'continuous and systematic general business contacts' in the forum, notwithstanding the fact that those contacts do not relate to the underlying cause of action." Atlantigas, 290 F. Supp. at 50 (finding no basis for assertion of general personal jurisdiction over nonresident defendant based on website) (citing cases, including Helicopteros v. Nacionales de Columbia, S.A., v. Hall, 466 U.S. 408, 416 (1984)).

Here, the First Amended Complaint fails to expressly allege that Defendants have engaged in continuous and systematic general business contacts in the District of Columbia, and also fails to plead any facts which might support such a theory. The passing reference to Defendants' website is insufficient as a matter of law.

Mere accessibility of a nonresident defendant's website does not establish the necessary minimum contacts for a Court's assertion of general jurisdiction. See FC Inv. Group LC v. IFX Markets, LTD., 479 F. Supp. 2d 30, 36 (D.D.C. 2007) (citing Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002) and GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)). "A website accessible by computers in the District of Columbia, or by District of Columbia residents, is not purposeful availment; rather it is merely an unavoidable side-effect of modern internet technology." Doe v. State of Israel, 400 F. Supp. 2d 86, 121 (D.D.C. 2005).

District of Columbia law on the issue consistently recognizes a distinction between merely passive websites and highly interactive websites. In considering whether a nonresident defendant is subject to jurisdiction in a District of Columbia court based on maintenance of an internet website which District of Columbia residents may access, Courts engage in an analysis

as to whether the highly interactive internet contacts with the forum can establish continuous and systematic general business contacts in the District of Columbia when combined with non-internet related contacts. See Atlantigas, 290 F. Supp. at 51-52 (citing Gorman). A passive website that simply makes available information -- such as The San Diego Union Tribune's newspaper articles – does not establish a basis for a Court's exercise of general jurisdiction. Id. See also GTE New Media Servs., 199 F.3d at 1350 ("We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.").

District of Columbia courts have consistently found that general jurisdiction is **not** created by passive websites or even interactive websites where limited information is exchanged:

* In Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc., 989 F. Supp. 265, 272 (D.D.C. 1998), this Court held that the fact that some District of Columbia residents may have visited and read information posted on an AOL electronic bulletin board could not be construed as transacting business in the District of Columbia. "There is no nationwide jurisdiction for defamation actions [citations omitted] and the advent of the Internet and Internet service providers such as AOL does not change that fact." Id. at 272 (citations omitted).

* In GTE New Media Servs. Inc. v. BellSouth Corp., cited above, the Court determined that District of Columbia residents accessing an online Yellow Page site were not transacting business. District of Columbia residents did not pay to view the listings and they transacted no business.

* In Atlantigas Corp. v. Nisource, Inc. et al., cited above, this Court evaluated a website that was an active electronic bulletin board. The website was used by a District of Columbia gas trader to enter into a contract and schedule natural gas deliveries. This Court determined that the website was not wholly passive, but still insufficient to create general jurisdiction, even when combined with claims that two other unnamed District of Columbia residents contracted over the website. Id. at 52. "Even if it is interactive, the website must be used by a defendant to do business with residents in the forum state in a continuous and systematic way." Id. at 51.

\*  In <u>Doe v. State of Israel</u>, cited above, the website run by a religious corporation had fundraising capacity and a forum for exchange of contact information. The website was accessible to District of Columbia residents. This Court found no general jurisdiction, noting that there were no allegations that donations were solicited in or made from the District of Columbia, or that any District of Columbia resident suffered any harm. <u>Id.</u> at 121. The Court distinguished the defendant's website from Ameritrade's website at issue in <u>Gorman</u>. Moreover, the nonresident defendant's website at issue in <u>Doe</u> targeted a local congregation in New Jersey, and was not the virtual equivalent to being present in the District of Columbia. <u>Id.</u>

\*  Finally, in <u>FC Inv. Group LC v. IFX Markets, LTD.</u> this Court determined that the subject website fell "in the middle ground between 'merely informational' [citing <u>Atlantigas</u>] and fully 'active.'" [citing <u>Gorman</u>]. The subject website required interested parties to download, sign and mail an application form. The subject website also featured a "demo" feature allowing users to download it and practice using defendant's services over the internet. This Court found that this middle ground of interactivity was not enough to establish general jurisdiction. <u>Id.</u> at 38.[3]

By contrast and unlike in this case, there are highly interactive websites which Courts in the District of Columbia have held constitute a basis for a finding of a nonresident's continuous and systematic business contact with the District of Columbia. For instance, in <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506 (D.C. Cir. 2002), defendant Ameritrade ran a website which was not passive. District of Columbia residents could and did use the website to conduct direct financial transactions with Ameritrade. District of Columbia residents could and did use the Ameritrade website to open "brokerage accounts on-line; transmit funds to their accounts electronically; and use those accounts to buy and sell securities, to borrow from Ameritrade on

---

[3]  Similar conclusions have been reached by Courts in other jurisdictions, on facts very similar to those in this case. <u>See</u>, <u>e.g.</u>, <u>Revell v. Lidov</u>, 317 F.3d 467 (5th Cir. 2002) (where Texas resident brought action against non-resident defendants based on allegedly defamatory articles posted on internet bulletin board; a Texas court could not exercise personal jurisdiction because the article did not refer to Texas and the article was not specifically directed at Texas readers); <u>Young v. New Haven Advocate</u>, 315 F.3d 256 (4th Cir. 2002) (finding a Virginia court's lack of personal jurisdiction over newspaper entities where there was no manifest intent to aim their websites or posted articles at a Virginia audience), <u>cert. denied</u>, 538 U.S. 1035 (2003).

margin, and to pay Ameritrade brokerage commissions and interest." Id. at 512. In holding that that sort of extensive interactivity was sufficient for the Court to find that Ameritrade was subject to personal jurisdiction in the District of Columbia, the Court commented that Ameritrade and its customers engaged in binding contracts; bought and sold securities; and produced significant revenue for Ameritrade, such that Ameritrade was using the internet to create continuous and systematic business contact with the District of Columbia. Id. at 512-513.

Plaintiff's allegations in this case do not come close to meeting the standards set forth by District of Columbia courts with respect to establishment of general jurisdiction. The nature of Defendants' website suggests that the Court has no basis upon which to assert jurisdiction under D.C. Code § 13-334(a). Interactivity on the website operated by The San Diego Union Tribune is limited and non-commercial, in the sense that visitors to or users of the site are not charged a fee to access the content. Jennewin Dec. at ¶ 3; see also Burleson v. Toback, 391 F. Supp. 2d 401 (M.D.N.C. 2005) (granting motion to dismiss for lack of personal jurisdiction based on internet website) ("LBI is free to the viewing public. Although membership is required to post in the LBI Forum, membership is free."). No registration is required to access the content on the U-T website. Jennewin Dec. at ¶ 3.

Defendants' website is targeted at San Diego Union Tribune readers. Id. at ¶ 4. The U-T website is not intended to target readers in the District of Columbia. The overall content of the website is local to San Diego, CA and does not contain advertisements aimed at residents of the District of Columbia. Id. For example, the website provides access to local (San Diego, CA) weather and traffic information and links to websites for local surf conditions and local webcams. Id. See also Young v. New Haven Advocate, 315 F.3d 256, 263-64 (4th Cir. 2002) (affirming dismissal of action for lack of personal jurisdiction based on newspaper's website)

20

("The facts in this case establish that the newspapers' websites, as well as the articles in question, were aimed at a Connecticut audience."), <u>cert. denied</u>, 538 U.S. 1035 (2003); <u>Jackson v. California Newspapers P'ship</u>, 406 F. Supp. 2d 893 (N.D. Ill. 2005) (granting motion to dismiss for lack of personal jurisdiction) ("The weather on the home page is local . . . .").

      The website is designed to serve local readers in San Diego; to expand the reach of the newspaper within the local market; and to provide local markets with a place for classified ads. Jennewin Dec. at ¶ 4; <u>Jackson,</u> 406 F. Supp. 2d at 898 (N.D. Ill. 2005) ("The website www.dailybulletin.com is directed at California residents, specifically those in and around Ontario, California.").

      Indeed, the two articles on which the First Amended Complaint is premised clearly suggest that they were designed to target a San Diego – not Washington, D.C. – audience. The articles report on the status of an investigation into an alleged co-conspirator (based out of the San Diego area) of then-former Congressman Duke Cunningham's (who, until his resignation in November 2005, represented California's 50th Congressional District, which covered a part of San Diego County) alleged conduct. San Diego, not Washington, D.C., was the focal point of the articles. <u>See Young</u>, 315 F.3d at 263-64 ("We also examine the specific articles Young complains about to determine whether they were posted on the Internet with the intent to target a Virginia audience. . . . The articles reported on and encouraged a public debate in Connecticut . . . . Connecticut, not Virginia, was the focal point of the articles."). <u>See also Revell v. Lidov</u>, 317 F.3d 467, 475 (5th Cir. 2002) (affirming dismissal based on lack of personal jurisdiction) ("In short, this was not about Texas. If the article had a geographic focus, it was Washington, D.C.").

Finally, the primary web servers for the website are in two locations in San Diego, CA. <u>Id.</u> at ¶ 5.[4]  <u>See</u>, <u>e.g.</u>, <u>GTE New Media Servs.</u>, 199 F.3d at 1350 (no general jurisdiction over nonresident defendant where its "computer servers [were] . . . all . . . apparently are operated outside of the District.").

## III.    THE DISTRICT OF COLUMBIA IS NOT THE PROPER VENUE FOR THIS CASE.

As an independent and alternative basis for dismissal, the Court should dismiss this lawsuit against Defendants Copley and The San Diego Union Tribune on the ground that venue is improper.  In cases based upon diversity of citizenship, venue is only proper in a district where:

> (1) any defendant resides if all defendants reside in the same state;
>
> (2) a substantial part of the events or omissions giving rise to the claim occurred; or
>
> (3) where any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  It is Plaintiffs' burden to allege facts sufficient to establish proper venue. <u>Lamont v. Haig</u>, 590 F.2d 1124, 1136 (D.C. Cir. 1978); <u>Williamson v. McKinney</u>, 1988 WL 80049 (D.D.C. 1988).  Additionally, venue must be proper as to each defendant in the lawsuit. <u>Payne v. Marketing Showcase, Inc.</u>, 602 F. Supp. 656, 658 (N.D. Ill. 1985).  The purpose of the statutory venue provisions is to "protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 183-184 (1979).

---

[4]      Copley uses third-party applications (<u>e.g.</u>, for automotive classified, streaming video, site analytics, etc.), but to its knowledge none of the third parties' servers are located in Washington, D.C. <u>Id.</u>

Plaintiffs' First Amended Complaint summarily states that this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367. First Amended Complaint at ¶ 1. Plaintiffs also suggest that venue is proper in the District of Columbia because Plaintiffs conduct significant business in the District of Columbia and, without allegations of fact in support, claim injury in the District of Columbia as a result of the newspaper articles. However, such bare conclusions are inadequate. The second provision of § 1391(a) ("a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred") is the only provision relevant to the facts at hand.

"Section 1391(b)(2) has been interpreted as requiring a court to focus on the actions of the defendant, not of the plaintiff." McDaniel v. IBP, Inc., 89 F. Supp. 2d 1289, 1294 (M.D. Ala. 2000) (granting motion to transfer venue pursuant to 28 U.S.C. § 1406). See also Hampton v. Gregory, 2003 WL 344327 at *1 (6th Cir. Feb. 7, 2003) (affirming dismissal for improper venue based on § 1391(a)(2)) ("Hampton does not claim that any event, act, or action which forms the basis of his complaint occurred in the Northern District of Ohio. To the contrary, the events in question occurred in Louisiana and Texas.").

None of the events giving rise to the claim occurred in the District of Columbia. As a matter of law, any alleged transgression occurred in San Diego, California, the site where the articles were published. Moncrief, 807 F.2d at 221 (in defamation actions the place of the act or omission is the location of the publication, not the place of the injury); McFarlane, 74 F.3d at 1300. Moreover, a "substantial part of the events" only took place in San Diego.

Before the venue statute was amended in 1990, venue was proper "where the claim arose." In anticipation of the statute's amendment, District of Columbia courts, as well the United States Supreme Court, interpreted "where the claim arose" as the place "where a

substantial portion of the acts or omissions giving rise to the actions occurred." Akbar, 490 F. Supp. at 66. Under this analysis, venue could lie in more than one forum as long as both forums have "equal plausibility." Id. See also Davis v. Costa-Gavras, 580 F. Supp. 1092 (S.N.D.Y. 1984) ("Multiple venue under the 'claim arose' provision is proper at most in districts that with 'approximately equal plausibility' may be assigned as the locus of the claim.") Leroy, 443 U.S. at 184.

Here, Plaintiffs cannot argue in good faith that the District of Columbia is an "equally plausible" district where a substantial part of the events occurred. Instead, the only district where the events and occurrences could have taken place is in the Southern District of California, the residence of Copley and The San Diego Union Tribune, and the place where the allegedly defamatory newspaper articles were researched, written and published. See Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (affirming dismissal on the basis of improper venue) ("We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.").

Plaintiffs' allegations are completely inadequate to meet their burden of showing venue is proper. Plaintiffs have chosen an inconvenient and unfair location to bring this lawsuit against Copley and The San Diego Union Tribune. Under § 1391 only San Diego, on the opposite side of the country from the District of Columbia, is the one proper venue for this action. The policy underlying the federal venue provision is not served by bringing these claims against Copley and The San Diego Union Tribune in the District of Columbia. Thus, this action should be dismissed for improper venue.

## CONCLUSION

For the foregoing reasons Defendant Copley Press, Inc. and The San Diego Union Tribune respectfully request this Court to dismiss them as defendants from this lawsuit for lack of personal jurisdiction. Alternatively, Defendant Copley Press, Inc. and The San Diego Union Tribune request that they be dismissed from this lawsuit for improper venue.

## REQUEST FOR AN ORAL HEARING

Pursuant to Local Rule LCvR 7(f) and LCvR 78.1, Defendants respectfully request that the Court schedule an oral hearing on their Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction or in the Alternative for Improper Venue.


DATED:  October 22, 2007                    SANDS ANDERSON MARKS & MILLER
                                            A Professional Corporation



                                            _____/s/ Paige A. Levy_____
                                            Paige A. Levy        D.C. Bar No. 453535
                                            plevy@sandsanderson.com
                                            1497 Chain Bridge Road
                                            Suite 202
                                            McLean, VA  22101
                                            (703) 893-3600
                                            (703) 893-8484 (fax)

                                            **Counsel for Defendants**

# Co-conspirator's possible links to prostitutes eyed

**By Dean Calbreath**
UNION-TRIBUNE STAFF WRITER

**April 28, 2006**

Federal prosecutors are reviewing records of two Washington, D.C., hotels where Poway defense contractor Brent Wilkes rented suites as part of their investigation into whether prostitutes were involved as he tried to curry favor with lawmakers and CIA officials.

Wilkes, whom federal prosecutors have identified as a co-conspirator in the bribery case of former Rep. Randy "Duke" Cunningham, rented hospitality suites in the capital on behalf of his flagship company, ADCS Inc.

As *The San Diego Union-Tribune* reported in December, the suites – first at the Watergate Hotel and then at the Westin Grand Hotel – had several bedrooms where lawmakers and other guests could relax.

Federal investigators are trying to determine whether Cunningham and other legislators brought prostitutes to the hotels or prostitutes were provided for them there, according to a report in yesterday's *Wall Street Journal* and confirmed by the *Union-Tribune.*

A source close to the bribery case, who spoke on the condition of anonymity because of the ongoing investigation, told the *Union-Tribune* that Mitchell Wade, who pleaded guilty in February to bribing Cunningham, told federal prosecutors that he periodically helped arrange for a prostitute for the then-congressman.

A limousine would pick up Cunningham and a prostitute and take them to the ADCS hospitality suite, Wade reportedly told investigators. Federal agents are investigating whether other legislators had similar arrangements with Wilkes or Wade, a business associate of Wilkes who ran his own defense contracting company, MZM Inc.

Wilkes' attorney, Michael Lipman, denies that his client hired prostitutes.



EXHIBIT

A

Two of Wilkes' former business associates say they were present on several occasions when Shirlington Limousine & Transportation Service of northern Virginia brought prostitutes to the suite. They say they did not see lawmakers in the suites on those occasions, though both had heard rumors of congressmen bringing women to the rooms.

Shirlington's attorney, Bobby S. Stafford, confirmed in a letter that from the company's founding in 1990 through the early 2000s, Shirlington President Christopher Baker "provided limousine services for Mr. Wilkes for whatever entertainment he had in the Watergate."

Stafford's letter stated that Baker was "never in attendance in any party where any women were being used for prostitution purposes."

Last year, Shirlington won a $21 million contract from the Department of Homeland Security.

According to the *Journal,* FBI agents have interviewed women employed at escort services in Washington, as well as other potential witnesses.

In his guilty plea in November, Cunningham said Wilkes, referred to as "co-conspirator No. 1," gave him more than $630,000 in cash and gifts in order to gain government contracts. Wade, known as "co-conspirator No. 2," also named Wilkes in his guilty plea. Wilkes has not been indicted in the case, and his companies continue to receive money from government contracts.

Several of Wilkes' former employees and business associates say he used the hospitality suites over the past 15 years to curry favor with lawmakers as well as officials with the CIA, where both Wilkes and Wade sought contracts.

Wilkes hosted parties for lawmakers and periodic poker games that included CIA officials as well as members of the House Appropriations and Intelligence committees. Cunningham, who sat on both committees, was a frequent guest, according to some of the participants in the poker games.

People who were present at the games said one of the regular players was Kyle Dustin "Dusty" Foggo, who has been Wilkes' best friend since the two attended junior high school in Chula Vista in the late 1960s. In October,

Foggo was named the CIA's executive director – the agency's third-highest position.

Another player was a CIA agent known as "Nine Fingers," so named because he lost one of his digits while on assignment.

"I remember big spreads of food and alcohol, but mostly cigars," said former Rep. Charlie Wilson of Texas, who attended a couple of the poker parties during the 1990s.

Wilson said nearly all the poker players at the two games he attended were CIA officials, including Foggo and Nine Fingers. He said there were no women or other lawmakers present, but added that he had to leave the games early "because the cigar smoke was too thick, and I don't deal well with that."

Foggo, who occasionally hosted the poker parties at his house in northern Virginia, is under investigation by the CIA's inspector general to determine whether he helped Wilkes gain CIA contracts.

CIA spokesman Paul Gimigliano said such an investigation is routine when questions are raised about an official's actions at the agency.

"Because the inspector general's review is ongoing, it would be inappropriate to discuss specific matters that may fall within that review," Gimigliano said. "The fact that the inspector general is looking into something should in no way be seen as lending credibility to any assertion."

One of Wilkes' companies, Archer Logistics, won a contract to provide bottled water, first-aid kits and other supplies to CIA agents in Afghanistan and Iraq. The company had no previous experience with such work, having been founded a few months before the contract was granted.

Critics familiar with the contract, valued at $2 million to $3 million, say the CIA overpaid for the work. The contract was approved by the CIA office in Frankfurt, Germany, where Foggo oversaw acquisitions. Foggo did not personally sign the contract, however, said unnamed CIA officials who spoke with *Newsweek.*

"Mr. Foggo maintains that the contracts for which he was responsible were properly awarded and administered," Gimigliano said.

# Co-conspirator's alleged prostitute link eyed

## Feds examining Poway contractor's hotel-suite rentals

**By Dean Calbreath**
UNION-TRIBUNE STAFF WRITER

**April 29, 2006**

*Note to readers: Because of production errors, the following story was garbled in two editions of yesterday's newspaper. It is reprinted here in its correct form.*

Federal prosecutors are reviewing records of two Washington, D.C., hotels where Poway defense contractor Brent Wilkes rented suites as part of their investigation into whether prostitutes were involved as he tried to curry favor with lawmakers and CIA officials.

Wilkes, whom federal prosecutors have identified as a co-conspirator in the bribery case of former Rep. Randy "Duke" Cunningham, rented hospitality suites in the capital on behalf of his flagship company, ADCS Inc.

As *The San Diego Union-Tribune* reported in December, the suites – first at the Watergate Hotel and then at the Westin Grand Hotel – had several bedrooms where lawmakers and other guests could relax.

Federal investigators are trying to determine whether Cunningham and other legislators brought prostitutes to the hotels or prostitutes were provided for them there, according to a report in Thursday's *Wall Street Journal* that was confirmed by the *Union-Tribune*.

A source close to the bribery case, who spoke on condition of anonymity because of the ongoing investigation, told the *Union-Tribune* that Mitchell Wade, who pleaded guilty in February to bribing Cunningham, told federal prosecutors that he periodically helped arrange for a prostitute for the then-congressman.

A limousine would pick up Cunningham and a prostitute and take them to


EXHIBIT
B

agents are investigating whether other legislators had similar arrangements with Wilkes or Wade, a business associate of Wilkes' who ran his own defense contracting company, MZM Inc.

Wilkes' attorney, Michael Lipman, denies that his client hired prostitutes.

Two of Wilkes' former business associates say they were present on several occasions when Shirlington Limousine & Transportation Service of northern Virginia brought prostitutes to the suite. They say they did not see lawmakers in the suites on those occasions, though both had heard rumors of congressmen bringing women to the rooms.

Shirlington's attorney, Bobby S. Stafford, confirmed in a letter that from the company's founding in 1990 through the early 2000s, Shirlington President Christopher Baker "provided limousine services for Mr. Wilkes for whatever entertainment he had in the Watergate."

Stafford's letter stated that Baker was "never in attendance in any party . . . where any women were being used for prostitution purposes."

Last year, Shirlington won a $21 million contract from the Department of Homeland Security.

According to the *Journal,* FBI agents have interviewed women employed at escort services in Washington, as well as other potential witnesses.

In his guilty plea in November, Cunningham said Wilkes, referred to as "co-conspirator No. 1," gave him more than $630,000 in cash and gifts in order to gain government contracts. Wade, known as "co-conspirator No. 2," also named Wilkes in his guilty plea. Wilkes has not been indicted in the case, and his companies continue to receive money from government contracts.

Several of Wilkes' former employees and business associates say he used the hospitality suites over the past 15 years to curry favor with lawmakers as well as officials with the CIA, where both Wilkes and Wade sought contracts.

Wilkes hosted parties for lawmakers and periodic poker games that

Intelligence committees. Cunningham, who sat on both committees, was a frequent guest, according to some of the participants in the poker games.

People who were present at the games said one of the regular players was Kyle Dustin "Dusty" Foggo, who has been Wilkes' best friend since the two attended junior high school in Chula Vista in the late 1960s. In October, Foggo was named the CIA's executive director – the agency's third-highest position.

Another player was a CIA agent known as "Nine Fingers," so named because he lost one of his digits while on assignment.

"I remember big spreads of food and alcohol, but mostly cigars," said former Rep. Charlie Wilson of Texas, who attended a couple of the poker parties during the 1990s.

Wilson said nearly all the poker players at the two games he attended were CIA officials, including Foggo and Nine Fingers. He said there were no women or other lawmakers present, but added that he had to leave the games early "because the cigar smoke was too thick, and I don't deal well with that."

Foggo, who occasionally hosted the poker parties at his house in northern Virginia, is under investigation by the CIA's inspector general to determine whether he helped Wilkes gain CIA contracts.

CIA spokesman Paul Gimigliano said such an investigation is routine when questions are raised about an official's actions at the agency.

"Because the inspector general's review is ongoing, it would be inappropriate to discuss specific matters that may fall within that review," Gimigliano said. "The fact that the inspector general is looking into something should in no way be seen as lending credibility to any assertion."

One of Wilkes' companies, Archer Logistics, won a contract to provide bottled water, first-aid kits and other supplies to CIA agents in Afghanistan and Iraq. The company had no previous experience with such work, having been founded a few months before the contract was granted.

Critics familiar with the contract, valued at $2 million to $3 million, say the CIA overpaid for the work. The contract was approved by the CIA office in Frankfurt, Germany, where Foggo oversaw acquisitions. Foggo did not personally sign the contract, however, said unnamed CIA officials who spoke with *Newsweek*.

"Mr. Foggo maintains that the contracts for which he was responsible were properly awarded and administered," Gimigliano said.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLINGTON LIMOUSINE AND )
TRANSPORTATION, INC. )
)
and )
)
CHRISTOPHER D. BAKER )
)
Plaintiffs, )
)
v. )    Civil Action No. 1:07-cv-00785
)    (RCL)
THE SAN DIEGO UNION TRIBUNE )
)
and )
)
THE COPLEY PRESS, INC., )
)
Defendants. )

## DECLARATION OF DEAN CALBREATH

I, Dean Calbreath, declare and state as follows:

1.     I am employed by The San Diego Union-Tribune as a staff newspaper writer.  I
have worked for The San Diego Union-Tribune for the last 10 years.

2.     On April 28, 2006, an article was published in The San Diego Union-Tribune
entitled "Co-Conspirator's possible links to prostitutes eyed."

3.     The newspaper article referenced above was researched, written and published in
San Diego, California.  I was responsible for writing the above newspaper article and I received
no assistance from the Copley News Service bureau in the District of Columbia.

4.     On April 29, 2006, an article was published in The San Diego Union-Tribune
entitled "Co-Conspirator's possible links to prostitutes eyed; Feds examining Poway contractor's
hotel-suite rentals."  The article had a preface which stated as follows: "Note to readers: Because

EXHIBIT

C

of production errors, the following story was garbled in two editions of yesterday's newspaper.

It is reprinted here in its correct form."

5.    The newspaper article referenced above was researched, written and published in

San Diego, California. I was responsible for writing the above newspaper article and I received

no assistance from the Copley News Service bureau in the District of Columbia.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 5, 2007.


Dean Calbreath

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC. <br><br> and <br><br> CHRISTOPHER D. BAKER <br><br>     Plaintiffs, <br><br> v. <br><br> THE SAN DIEGO UNION TRIBUNE <br><br> and <br><br> THE COPLEY PRESS, INC., <br><br>     Defendants. | Civil Action No. 1:07-cv-00785 (RCL) |

---

### DECLARATION OF DEAN DWYER

I, Dean Dwyer, declare and state as follows:

1.    I am Vice President, Chief Financial Officer & Treasurer of The Copley Press, Inc. ("Copley"). I am familiar with the business structure of Copley and the facts of this case. If called upon, I could and would testify to the matters discussed below.

2.    Copley's principal place of business is in San Diego, California. It owns and operates local daily and weekly newspapers in California. Copley does not publish any national newspapers. It also does not publish any newspapers within the District of Columbia. Copley does not target subscribers in the District of Columbia. Copley's only physical presence in the District of Columbia is a news gathering bureau which is a division of Copley. The name of the bureau is Copley News Service.



EXHIBIT

D

3.     Copley owns The San Diego Union-Tribune which is published in San Diego, California.  Only one paid subscription of this newspaper is sent by mail to an address within the District of Columbia.  This one newspaper goes to the United States Library of Congress.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October  5, 2007.

Dean Dwyer

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC.<br><br>and<br><br>CHRISTOPHER D. BAKER<br><br>     Plaintiffs,<br><br>v.<br><br>THE SAN DIEGO UNION TRIBUNE<br><br>and<br><br>THE COPLEY PRESS, INC.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:07-cv-00785 (RCL) |

## <u>DECLARATION OF GLENDA WINDERS</u>

I, Glenda Winders, declare and state as follows:

1.    I am Vice President and Editor of the Copley News Service ("CNS"), a division of Copley Press, Inc. I oversee the daily operations for CNS. If called upon, I could and would testify to the matters discussed below.

2.    The headquarters and principal place of business for CNS are in San Diego, California. CNS maintains four news bureaus in North America, one of which is located in the District of Columbia. The purpose of the District of Columbia news bureau is to report on news in the region on behalf of Copley Press, Inc. in San Diego. The District of Columbia bureau does not engage in any business other than news gathering activities. Specifically, the District of Columbia bureau does not publish nor distribute newspapers.



EXHIBIT

E

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October _5_, 2007.

Glenda Winders

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC. | ) ) ) | |
| and | ) ) | |
| CHRISTOPHER D. BAKER | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:07-cv-00785 (RCL) |
| THE SAN DIEGO UNION TRIBUNE | ) ) | |
| and | ) ) | |
| THE COPLEY PRESS, INC., | ) ) | |
| Defendants. | ) | |

### DECLARATION OF JAMES CHRISTOPHER JENNEWIN

I, James Christopher Jennewin, declare and state as follows:

1.      I am employed by San Diego Union-Tribune ("Copley") in the capacity of Vice President of SignOnSanDiego.com.  As Vice President I have responsibility for and work regularly with the website maintained by Copley (see www.signonsandiego.com) (the "U-T Website").  If called upon, I could and would testify to the matters discussed below.

2.      Copley did not publish any electronic versions of the April 28 and April 29, 2006 San Diego Union Tribune articles referenced in the Amended Complaint in this matter other than as posted on the U-T Website.

3.      Interactivity on the U-T Website is limited and non-commercial, in the sense that visitors to or users of the site are not charged a fee to access the content.  No registration is



required to access the content on the U-T website and a reader is asked to answer a few questions before accessing the current day's newspaper.

4.    The U-T Website is targeted at San Diego Union Tribune readers. The U-T website is not intended to target readers in the District of Columbia. The overall content of the website is local to San Diego, CA and does not contain advertisements aimed at residents of the District of Columbia. For example, the website provides access to local (San Diego, CA) weather and traffic information and links to websites for local surf conditions and local (to the San Diego area) webcams. The website is designed to serve local readers in San Diego; to expand the reach of the newspaper within the local market; and to provide local markets with a place for classified ads.

5.    The primary web servers for the U-T website are in two locations in San Diego, CA. Copley uses third-party applications (e.g., for automotive classified, streaming video, site analytics, etc.), but to our knowledge none of the third party's servers are located in Washington, D.C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 19, 2007.

James C. Jennewein

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC. | ) ) ) | |
| and | ) ) | |
| CHRISTOPHER D. BAKER, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:07-cv-00785 (RCL) |
| THE SAN DIEGO UNION TRIBUNE | ) ) | |
| and | ) ) | |
| THE COPLEY PRESS, INC., | ) ) | |
| Defendants. | ) | |

## **ORDER**

THIS MATTER came before the Court on DEFENDANTS THE COPLEY PRESS, INC.'S AND THE SAN DIEGO UNION-TRIBUNE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE FOR IMPROPER VENUE;

HAVING CONSIDERED the parties' motions papers and the oral argument by counsel, it is hereby

ORDERED that DEFENDANTS THE COPLEY PRESS, INC.'S AND THE SAN DIEGO UNION-TRIBUNE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE FOR IMPROPER VENUE is <u>GRANTED</u>; and it is further

ORDERED this case is dismissed with prejudice against DEFENDANTS THE COPLEY

PRESS, INC. AND THE SAN DIEGO UNION-TRIBUNE.


Dated: _____                _____

                                            United States District Court for
                                            the District of Columbia


Copies to:

Donald. M. Temple
Donald M. Temple, P.C.
1229 15th Street, NW
Washington, DC  20005
dtemplelaw@aol.com

Paige A. Levy, Esquire
Sands Anderson Marks & Miller
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
plevy@sandsanderson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing DEFENDANTS THE COPLEY PRESS, INC.'S AND THE SAN DIEGO UNION-TRIBUNE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE FOR IMPROPER VENUE, Memorandum in Support and proposed Order were filed electronically with the court's CM/ECF system and pursuant to the Court's electronic filing procedures on October 22, 2007, which will send notification of such filing to the following:

> Donald. M. Temple
> Donald M. Temple, P.C.
> 1229 15th Street, NW
> Washington, DC  20005
> (202) 628-1101
> (202) 628-1149 (fax)
> dtemplelaw@aol.com
> **Counsel for Plaintiffs**


　　　　　　　　　　/s/ Paige A. Levy

Paige A. Levy　　　　D.C. Bar No. 453535
plevy@sandsanderson.com
Sands Anderson Marks & Miller, PC
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
(703) 893-3600
(703) 893-8484 (fax)


**Counsel for Defendants**