UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SHIRLINGTON LIMOUSINE AND TRANSPORTATION, INC.**, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-0785 (RCL) |
| **THE SAN DIEGO UNION-TRIBUNE**, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Now before the Court comes defendants The San Diego Union-Tribune and Copley Press, Inc.'s Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction or in the Alternative for Improper Venue [14]. Upon consideration of the motion, plaintiffs Shirlington Limousine and Transportation, Inc. and Christopher D. Baker's opposition [15], defendants' reply [16], the entire record herein, and the applicable law, the Court will GRANT defendants' motion.

I.  **FACTUAL BACKGROUND**

Plaintiffs Shirlington Limousine and Transportation, Inc. ("Shirlington") and Christopher D. Baker filed suit in this Court on April 30, 2007 against defendants The San Diego Union-Tribune ("Tribune") and The Copley Press, Inc. ("Copley"), alleging a number of claims

stemming from two articles published by the Tribune.

### A. Publication of the Articles and the Aftermath

The Tribune published two articles which serve as the focal point of this action. Both articles were written by Mr. Dean Calbreath, and the research, writing, and publication took place entirely within San Diego. (*See* Calbreath Decl. ¶¶ 3, 5.) Mr. Calbreath received no assistance from the Copley News Service Bureau in Washington, D.C. in preparing these articles. (*Id.*) The first article was published on April 28, 2006, and the second was published the following day. (*See* Mot. Dismiss Ex. A & B.) The content of the articles was precisely the same; a printing error forced the Tribune to print the article a second time. (*See id.*) The articles highlighted a sordid tale of bribery involving legislators in Washington, D.C., including former congressman Duke Cunningham. (*See id.*) Central to the allegations at issue here, the articles cited sources who claimed that plaintiffs brought prostitutes to the hotel suite where the legislators would congregate and socialize. (*See id.*)

Plaintiffs claim these allegations of wrongdoing are false and were made with reckless disregard of the truth. (Compl. 3.) Plaintiffs assert that they became the focus of intense media scrutiny after the Tribune articles were circulated throughout various U.S. media outlets. (*Id.*) As a direct consequence of the articles' publication, plaintiffs allege, their reputations were indelibly damaged. (*Id.*) This reputational damage was exacerbated by Congress's launching of an investigation of Shirlington in response to the Tribune's allegations. (*See* Comp. 3-4.) Ultimately, plaintiffs' lease at the Ronald Reagan Washington National Airport was terminated, and they suffered other business damages. (*See id.*) In seeking recompense for these alleged damages, plaintiffs assert libel and false light claims against defendants. (Compl. 3-6.)

B.    **Copley and the Tribune**

Copley owns the Tribune (Dwyer Decl. ¶ 3), and the principal place of business of both entities is California (*see* Mot. Dismiss 2-3). Only one paid subscription of the Tribune is mailed anywhere within Washington, D.C. - to the Library of Congress. (Dwyer Decl. ¶ 3.) Copley does not own or publish any national newspapers or any newspapers within Washington, D.C. (Dwyer Decl. ¶ 2.)

Copley's physical presence in Washington extends only to a newsgathering bureau, which operates as a division of Copley. (*Id.*) The bureau's purpose is to gather newsworthy information on behalf of Copley and subsequently report it to other outlets. (*See* Winders Decl. ¶ 2.) The Washington bureau does not publish or distribute newspapers; its sole function is newsgathering. (*See id.*)

Copley does, however, operate a website for the Tribune, and this website is accessible by users in Washington. (*See* Jennewin Decl. ¶ 1.) The site has limited user interactivity, and users are neither charged a fee nor forced to register to access the site's content. (*Id.* ¶ 3.) The site is designed for use principally by San Diego residents - the content focuses on local news, and local weather conditions and webcams are posted. (*Id.* ¶ 4.) Moreover, the website's primary web servers are located in San Diego, and, to the best of Copley's knowledge, no third-party application servers are located in Washington. (*Id.* ¶ 5.)

## II.   ANALYSIS

### A.   Principles of Personal Jurisdiction Analysis

Exercising personal jurisdiction over a non-resident defendant requires that "service of process [] be authorized by statute and [] comport with the Due Process Clause of the Fourteenth Amendment." *Wiggins v. Equifax, Inc.*, 853 F. Supp. 500, 502 (D.D.C. 1994). In accord with longstanding Supreme Court precedent, "personal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with the 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 (1987)).

Purposeful availment thus stands as a touchstone of personal jurisdiction analysis, and the plaintiff "must allege some specific facts evidencing purposeful activity by [d]efendants in the District of Columbia by which they invoked the benefits and protections of its laws." *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). Plaintiffs may discharge this burden by "showing that all the requirements of the Long Arm statute have been met," and "[m]ere conclusory statements . . . will not suffice." *Jones v. City of Buffalo*, 901 F. Supp. 19, 21 (D.D.C. 1994). The imposition of such a burden on plaintiffs excepts personal jurisdiction analysis from the general rule that all allegations must be taken as true for purposes of ruling on a motion to dismiss. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Indeed, courts may consider outside evidence to make factual determinations in disposing of a motion to dismiss for lack of personal jurisdiction. *See id.*

**B.     D.C. Long-Arm Statute**

A District of Columbia court may ground its exercise of jurisdiction in the contents of the D.C. Long-Arm Statute. *See* D.C. CODE § 13-423 (2008). Though plaintiffs concede that the Court's jurisdiction cannot be found pursuant to the Long-Arm Statute (*see* Reply 1), the Court will nevertheless demonstrate the propriety of such a conclusion.

The D.C. Long-Arm Statute provides in relevant part as follows:

> a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; . . . (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. CODE § 13-423(a). Jurisdiction based solely on this provision is specific in nature: "only a claim for relief arising from acts enumerated in this section may be asserted against [defendant]." *Id.* 13-423(b).

Courts have long recognized a newsgathering exception to ordinary methods of personal jurisdiction analysis. *See, e.g.*, *Neely v. Phila. Inquirer, Co.*, 62 F.2d 873, 875 (D.C. Cir. 1932). Such an exception properly applies to agencies whose presence in Washington consists of "mere collection of news material for use in subsequent publication elsewhere." *Id.* The D.C. Circuit articulated over seventy-five years ago the need for a newsgathering exception:

> [a]s the seat of national government, Washington is the source of much news of national importance, which makes it desirable in the public interest that many newspapers should maintain vigilant correspondents here. If the employment of a Washington correspondent, the announcement of his address, and the payment of his office rent, subjects a nonresident newspaper corporation to legal process in Washington for matter appearing in its paper at home, it would bring in nearly every

important newspaper in the nation, and many foreign publishing corporations . . . .

*Id.*

The newsgathering exception has been expressly applied to Section 13-423 in subsequent cases. *See, e.g.*, *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 222 (D.C. Cir. 1986). The court in *Moncrief* reasoned that the exception "is intended to protect a newspaper whose only persistent course of conduct in the District is the maintenance of an office there for gathering news from being subject to the jurisdiction of the District's courts." *Id.* More recently, this Court cogently articulated the current state of the newsgathering exception: "this Circuit has consistently held that the business conduct of news gathering organizations within the District cannot be used to establish personal jurisdiction over an out-of-state news agency." *Lohrenz v. Donnelly*, 958 F. Supp. 17, 19 (D.D.C. 1997).

Recognition of the primacy of the newsgathering exception compels this Court's conclusion that it lacks authority under the Long-Arm Statute to exercise personal jurisdiction over defendants. Defendants' physical presence in Washington is limited to its D.C. newsgathering bureau. (*See* Dwyer Decl. ¶ 2.) The bureau engages in no functions aside from newsgathering. (*See* Winders Decl. ¶ 2.) Since defendants' "only persistent course of conduct in the District is the maintenance of an office there for gathering news," *Moncrief*, 807 F.2d at 222, the newsgathering exception squarely applies to this action, rendering inappropriate the Court's exercise of jurisdiction under the D.C. Long-Arm Statute.

C. **General Jurisdiction**

Though conceding that jurisdiction over defendants cannot be found under the D.C. Long-Arm Statute, plaintiffs contend that the Court may properly exercise general jurisdiction

6

pursuant to Section 13-334 of the D.C. Code.  (*See* Reply 1.)  The Court finds this argument unpersuasive in view of defendants' lack of sufficient contacts with Washington.

Section 13-334 of the D.C. Code[1] provides an alternative basis for a court's jurisdiction. *See Ross v. Prod. Dev. Corp.*, 736 F. Supp. 285, 289 (D.D.C. 1989).  Two conditions must be met for a court to properly exercise jurisdiction pursuant to this statute: "[defendant] must be 'doing business' in the District, and . . . the exercise of jurisdiction must comport with due process." *Id.* at 290.  Section 13-334 "confers jurisdiction over the defendant for all purposes . . . ." *Id.*  Recognizing that "there are no hard and fast rules as to what constitutes 'doing business,'" *id.*, courts have reasoned that exercise of jurisdiction is appropriate only where a non-resident defendant "has engaged in 'continuous and systematic general business contacts' in the forum," *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 50 (D.D.C. 2003).

Courts have offered guidance for assessing claims of general jurisdiction over news agency defendants.  *See, e.g.*, *Riss v. Ass'n of W. Ry.*, 159 F. Supp. 288, 292 (D.D.C. 1958).  The court in *Riss* held that "maintaining a correspondent in Washington merely to gather the news does not constitute 'doing business' in the District of Columbia." *Id.*; *accord Margoles v. Johns*, 333 F. Supp. 942, 946 (D.D.C. 1971), *aff'd*, 483 F.2d 1212 (D.C. Cir. 1973).  Indeed, the

---

[1] This section provides for the following: "(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court; (b) When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District." D.C. CODE § 13-334 (2008).

rationale underlying the newsgathering exception - that allowing a D.C. court to exercise jurisdiction over any news agency maintaining some presence in the District would subject almost every newspaper in the country to D.C. jurisdiction and may dissuade some agencies from covering Washington events - applies with equal force to Section 13-334 as it does to the Long-Arm Statute. Therefore, logic dictates that the tenor of analysis under Section 13-334 will comport with that under the Long-Arm Statute.

Though maintaining fidelity to the underpinnings of the newsgathering exception, D.C. courts have grappled with the implications of the Internet age in assessing jurisdictional questions involving news agencies. *See, e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 512-14 (D.C. Cir. 2002). Navigating the boundaries of personal jurisdiction grows nuanced when most newspapers offer their content over the Internet, thereby allowing access to reporting in almost every part of the country. *See, e.g.*, *id.*

Mere operation of an Internet site does not alone subject a defendant to jurisdiction in all fora in which content can be accessed, and plaintiffs must support jurisdictional arguments with more than vague assertions. *See Atlantigas*, 290 F. Supp. 2d at 51. The D.C. Circuit recently reasoned that maintaining commitment to the ideals of due process necessitates rejecting broad interpretations of jurisdiction in the Internet age:

> "When stripped to its core, [plaintiff's] theory of jurisdiction rests on the claim that, because the defendants have acted to maximize usage of their websites in the District, mere accessibility of the defendants' websites establishes the necessary "minimum contacts" with this forum. This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give a degree of predictability to the legal system that allows potential defendants to structure their

>  primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. In the context of the Internet, [plaintiff's] expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence."

*GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (citations and internal quotation marks omitted) (finding the court lacked personal jurisdiction where defendants' website allowed users merely to access information, and there was no indication in record that business was transacted through the site).  Put more bluntly, "[a] website accessible by computers in the District of Columbia, or by District of Columbia residents, is not purposeful availment; rather, it is merely an unavoidable side-effect of modern internet technology." *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005); *see also FC Inv. Group LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 37 (D.D.C. 2007) (finding no personal jurisdiction over defendant where defendant operated website "in the middle ground between 'merely informational' and 'fully active'").  Where courts have asserted jurisdiction over defendants based on a website, they have generally emphasized the ability to transact business over the site.  *See, e.g.*, *Gorman*, 293 F.3d at 512-14.

In addition to looking at the transacting of business over a website, courts have also focused on the apparent targets of a defendant's use of the site in evaluating the propriety of exercising personal jurisdiction.  *See, e.g.*, *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002).  For assertion of jurisdiction to be appropriate, "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on [readers in the forum state]." *Id.*  Courts have found no jurisdiction where a defendant's website contained only local

advertisements and weather reports. *See id.*; *Jackson v. Cal. Newspapers P'ship*, 406 F. Supp. 2d 893, 898 (N.D. Ill. 2005).

In view of the foregoing precedent, it is clear to the Court that it may not properly exercise jurisdiction over defendants in this action. Plaintiffs rely primarily on conclusory statements that defendants "do business" in Washington and are thus subject to the District's jurisdiction. (*See* Opp. 5-7.) Specifically, plaintiffs cite the presence of Copley's Washington news bureau, in addition to the Tribune's website, as evidence of "continuous and systematic general business contacts" in the District. (*See id.*) These assertions are groundless.

To begin with, the maintenance of a newsgathering facility in Washington does not constitute "doing business" under Section 13-334 and is therefore not sufficient to subject a defendant to jurisdiction in the District. *See Riss*, 159 F. Supp at 292. Since Copley's D.C. bureau is merely a newsgathering arm, *see* discussion *supra* Part II.B, jurisdiction under Section 13-334 cannot be based on its presence in the District.

Plaintiffs alternatively argue that defendants' website, accessible to users in Washington, constitutes a "continuous and systematic general business contact" such that exercise of jurisdiction here is appropriate. (*See* Opp. 5-7.) This contention ignores reality. The Tribune website is clearly targeted toward San Diego residents, as it offers only local weather information and local webcams. (*See* Jennewin Decl. ¶ 4.) Such focused content contributes to the conclusion that exercise of jurisdiction is inappropriate. *See Young*, 315 F.3d at 263; *Jackson*, 406 F. Supp. 2d at 898. Moreover, the Tribune's website is not used to facilitate the completion of complex business transactions (*see* Jennewin Decl.), and this corporate element is integral in establishing the propriety of a court's personal jurisdiction, *see Gorman*, 293 F.3d at 512-14. In

10

sum, the record shows virtually no attempts by defendants to attract to the Tribune's website visitors from anywhere but San Diego. As such, resting an assertion of personal jurisdiction on the website's interactivity is patently misguided.[2]

### III. CONCLUSION

For the foregoing reasons, the Court concludes that defendant's Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction or in the Alternative for Improper Venue will be GRANTED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth, on July 24, 2008.

---

[2]Because the Court finds it lacks personal jurisdiction over defendants, it finds it unnecessary to explore defendants' objections with respect to venue.